IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

In re: )
)
LONESTAR GEOPHYSICAL ) Case No. 15-11872
SURVEY, LLC, )
)
)
Debtor. )

### DECLARATION OF GEROD BLACK
### IN SUPPORT OF FIRST DAY MOTIONS

This Declaration is submitted by Gerod Black pursuant to 28 U.S.C. § 1746:

1.      I am the chief financial officer of Lonestar Geophysical Surveys, LLC ("Lonestar"). Except as otherwise noted, I have personal knowledge of and am competent to testify as to the facts stated herein.

2.      Lonestar is in the business of acquiring seismic data for the oil and gas industry. It owns a fleet of state-of-the-art vibes (vibrators that generate seismic waves) and a commensurately large inventory of wireless nodes (that receive those seismic waves and transmit the resulting information for processing and interpretation). Lonestar was started on August 4, 2009 by Heath Harris and has grown its revenues each year since its inception. Total revenues during 2014 were in excess of $18,000,000 and, despite a general downturn in the industry, year-to-date revenues remain strong.

3.      In December 2012, Lonestar borrowed money from Frontier State Bank. In connection with that transaction, Lonestar signed a Term Promissory Note dated Dec. 17, 2012 (the "Term Note") in the original principal amount of nine million dollars ($9,000,000.00) and a Revolving Promissory Note dated Dec. 17, 2012 (the "Revolving Note") in the original principal amount of one million dollars ($1,000,000.00) (the Term Note and the Revolving Note are referred

to collectively as the "Frontier Notes"). Also, to secure the Frontier Notes, Lonestar signed a Security/Pledge Agreement dated December 17, 2012 (the "Security Agreement") which purports to grant to Frontier a security interest in all of Lonestar's business assets, including "all inventory and accounts receivables."

4.  At the time Frontier loaned money to Lonestar, Dr. J.D. McKean, Jr., who is the president of Frontier, advised Lonestar that Frontier would not do the loan unless Lonestar also borrowed money from Cypress Springs Investments, L.P ("CSI") and Cypress Springs Associates, LLC ("CSA"). I have been informed and believe that CSI and CSA are companies that are owned and/or controlled by Dr. J.D. McKean, Jr. On December 17, 2012, Lonestar signed a Promissory Note in favor of CSI in the principal amount of $4,500,000 (the "CSI Note") and a Promissory Note in favor of CSA in the principal amount of $500,000 (the "CSA Note"). The CSI Note and the CSA Note were unsecured except that Lonestar was required to convey a 22.4% member interest to CSI and a 2.5% member interest to CSA for consideration of $500. I believe CSI and CSA are obligated to return those intersts upon payment of the CSI Note and the CSA Note.

5.  The nominal rate of interest payable on the Frontier Notes is 8% but upon default, which Frontier asserts has occurred, the Frontier Notes provide that the default interest rate is an additional 6%, for a total interest rate of 14%. The nominal interest rate payable on the CSI Note and the CSA Note is 20% but upon default, which CSI and CSA assert has occurred, the CSI Note and the CSA Note provide that the default interest rate is 24%.

6.  Although Lonestar's revenues remain strong, they are not sufficient to enable Lonestar to pay debt service on the Frontier Notes, the CSI Note, and the CSA Note at the interest rates claimed by Frontier, CSI and CSA. On April 6, 2015, Frontier filed a Verified Petition in the District Court of Oklahoma County, Oklahoma against Lonestar seeking a money judgment,

replevin of Lonestar's assets, appointment of a receiver, and other remedies. As a result, Lonestar determined that it had no alternative in order to preserve its ongoing business but to commence a Chapter 11 bankruptcy.

7. While the amount of Lonestar's expenses might vary significantly from month to month due to factors such as weather, the condition of crops planted on the property to be surveyed by Lonestar, scheduling of Lonestar's crews by Lonestar, and demand by Lonestar's customers, Lonestar's expenses (other than depreciation expense) regularly and reliably average approximately $1,000,000 per month. **Exhibit A** reflects actual expenses incurred by Lonestar during the period January 1, 2015 to May 15, 2015 and reflects the ordinary and necessary expenses customarily incurred by Lonestar in the ordinary course of business.

8. In the Verified Petition filed by Frontier, Frontier asserts that it is owed the principal sum of $4,733,800 plus unpaid interest through March 10, 2015 of $151,844.37 on the Term Note, and the principal sum of $1,000,000 plus unpaid interest through March 10, 2015 of $23,575.47 on the Revolving Note. Thus, the total amount that Frontier asserts is owed to it is just under $6,000,000.

9. I believe that the fair market value of Lonestar's assets as to which Frontier asserts a lien or security interest is approximately $13,500,000. Therefore, Frontier enjoys an equity cushion of approximately $7,500,000.

10. Prior to the commencement of this chapter 11 case, in the ordinary course of its business, Lonestar maintained 5 bank accounts at JPM Chase Bank, N.A. (collectively, the "Bank Accounts"). A listing of the Bank Accounts is provided on **Exhibit "B"** attached hereto as well as a description of the use of each Bank Account. I believe that JPM Chase Bank, N.A. is an

institution authorized to hold debtor-in-possession bank accounts. Lonestar intends to open a debtor-in-possession payroll tax account with JPM Chase Bank, N.A.

11. I have been advised that the Office of the United States Trustee has established certain operating guidelines for debtors-in-possession in order to supervise administration of chapter 11 cases. I have been advised that these guidelines require chapter 11 debtors to, among other things, (a) close all existing bank accounts and open new debtor-in-possession bank accounts; (b) establish one debtor-in-possession account for all estate monies required for payment of taxes including payroll; (c) maintain a separate debtor-in-possession account for cash collateral; and (d) obtain checks for all debtor-in-possession accounts which bear the designation "Debtor-In-Possession," the bankruptcy case number and the type of accounts. I believe that implementing these guidelines would require a substantial modification, if not abandonment, of Lonestar's prepetition banking operation.

12. The requirement that Lonestar close all existing accounts and open all new accounts would disrupt Lonestar's operations and result in delays in payments to employees, customers and creditors thereby impeding Lonestar's ability to ensure as smooth a transition into chapter 11 as possible. Lonestar proposes to change the style of the Bank Accounts to include designation as debtor-in-possession accounts while maintaining existing account numbers and the ability to use existing checks.

13. I believe that its existing Bank Accounts provides a cost-effective and efficient means of managing Lonestar's finances and the maintenance of such accounts will benefit all creditors by reducing day-to-day operating expenses of Lonestar's estate. Accordingly, as set forth below, Lonestar submits that failure to continue the Bank Accounts would disrupt Lonestar's

operations and impose a financial burden on the estate, while providing little benefit, if any, to Lonestar's estate and creditors.

14. One of the Bank Accounts was create to process payments from Lonestar's customers for landowner permit fees (the "Permit Fee Account"). Lonestar's customers are obligated to pay permit fees the owners of properties upon which seismic testing operations are conducted. As a service to its customers, Lonestar handles the payment of those fees. As a result, customers pay to Lonestar in trust the amount of any such fees, Lonestar deposits such payments in a segregated account (the "Permit Fee Account"), and Lonestar pays the permit fees to the landowner.

15. I understand that any payments that are received in Lonestar's accounts, other than the Permit Fee Account, will be treated as cash collateral and Lonestar will only be allowed to use such amounts by agreement of any secured creditors or order of this Court.

16. Several Utilities provide Lonestar with traditional utility services, such as telephone and communications services, electricity, water, sewer, gas, and other similar services that are necessary for the continued operation of Lonestar's day-to-day business operations. A list of all identified Utilities is attached hereto as **Exhibit "C"** (the "Utility Service List"). In some cases, Lonestar may have paid a security deposit to a Utility. I have made a good-faith effort to identify all Utilities and list them on the Utility Service List.

17. Uninterrupted utility service is critical to the ability of Lonestar to operate and maintain the value of its business and to maximize value for the benefit of the creditors. Lonestar could not operate its business without utility service. Should any Utility refuse or discontinue service, Lonestar could be forced to cease or limit operations. Such a cessation would substantially disrupt operations and result in loss of revenues, which would irreparably harm Lonestar.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Signed May 19, 2015.

_____
Gerod Black

**EXHIBIT A**

10:38 AM
05/19/15
Accrual Basis

## LoneStar Geophysical Surveys, LLC
## Profit & Loss
### January 1 through May 15, 2015

|  | Jan 1 - May 15, 15 |
|---|---:|
| **Ordinary Income/Expense** | |
| **Income** | |
| Damages Paid to Land Owners | 26,357.70 |
| Land Owner Damages | -800.00 |
| Land Owner Permits | 243,629.46 |
| Permit Agent Billing | 99,900.00 |
| **Service** | |
| 2D project | 79,810.78 |
| 3D project | 7,153,753.09 |
| Service - Other | 294,087.38 |
| **Total Service** | 7,527,651.25 |
| **Total Income** | 7,896,738.41 |
| **Gross Profit** | 7,896,738.41 |
| **Expense** | |
| Advertising and Promotion | 85,707.68 |
| Advisory & 3rd Party Relations | 50,500.00 |
| Air Travels | 6,068.14 |
| Bank Service Charges | 1,308.83 |
| Cleaning Service | 4,400.00 |
| Communications | 29,818.18 |
| Consumable Supplies | 45,648.77 |
| Contractor Wages and Fees | 721,036.69 |
| Damages Paid to Landowners | 35,066.97 |
| Dental Insurance Expense | 1,110.77 |
| Depreciation Expense | 1,162,797.20 |
| Donations | 150.00 |
| Dues & Subcriptions | 8,254.62 |
| Employee Medical | 3,965.50 |
| Employee Training Expense | 2,190.00 |
| Equipment Rental | 702,335.88 |
| Fuel | 260,494.38 |
| Health Insurance Expense | 60,577.91 |
| Hotels and Lodging | 267,437.30 |
| HSEQ Expense | 1,600.21 |
| Insurance Expense | 127,032.65 |
| Interest Expense | 184,608.87 |
| Land Owner Permit Fees | 122,625.01 |
| Licenses and Fees | 871.33 |
| Life and AD&D Expense | 930.94 |
| Meals and Entertainment | 823.11 |
| Mileage | 1,322.01 |
| Miscellaneous | 7,577.07 |
| Non Consumable Supplies | 4,402.32 |
| Non Management Wages | 4.60 |

10:38 AM
05/19/15
Accrual Basis

# LoneStar Geophysical Surveys, LLC
## Profit & Loss
January 1 through May 15, 2015

|  | Jan 1 - May 15, 15 |
|---|---:|
| Office Rent | 47,461.50 |
| Office Supplies | 7,648.17 |
| Parking | 819.61 |
| Payroll Expenses | 2,002,820.76 |
| Payroll Processing Fee | 1,161.60 |
| Payroll Taxes Expense | 229,466.12 |
| Penalties | 3,024.77 |
| Per Diem | 261,970.00 |
| Permit Agent Fees | 82,325.00 |
| Professional Fees | 163,278.93 |
| Property Taxes | 1,156.81 |
| Rent Expense |  |
|    Car Rental | 956.45 |
|    Rent Expense - Other | 0.00 |
| Total Rent Expense | 956.45 |
| Repairs and Maintenance | 120,042.71 |
| Security Services | 405.35 |
| Shipping | 8,868.62 |
| State Franchise Taxes Expense | 50.00 |
| Storage | 1,133.26 |
| Tools | 2,864.84 |
| Transport Services | 182,755.95 |
| Utilities | 9,188.52 |
| Vehicles Tag and Title | 778.93 |
| Vision Insurance Expense | 394.07 |
| Workmans Compensation Insurance | -21,182.00 |
| **Total Expense** | 7,008,056.91 |
| **Net Ordinary Income** | 888,681.50 |
| Other Income/Expense |  |
|   Other Income |  |
|     Client Incentives | -16,042.00 |
|     Rebate Income | 8,162.37 |
|   Total Other Income | -7,879.63 |
|   Other Expense |  |
|     Ask Gerod | -41,993.28 |
|     Stock Transfer Fees | 300.00 |
|   Total Other Expense | -41,693.28 |
| **Net Other Income** | 33,813.65 |
| **Net Income** | **922,495.15** |

Page 2

# EXHIBIT B

## JP MORGAN CHASE BANK ACCOUNTS

| LAST 4 DIGITS OF ACCOUNT | PURPOSE |
|---|---|
| 4022 | Main operating account |
| 4055 | Used to pay per diem expenses of field employees |
| 6851 | Field manager account for purpose of paying non-employee field expenses |
| 7172 | Used to receive and pay out permit fees paid to Lonestar in trust for affected landowners |
| 7766 | Survey crew manager account for expenses of survey crews |

**EXHIBIT C**

**Oakley KS - Shop**

| | |
|---|---|
| City of Oakley | Water/Trash - Oakley |
| Midwest Energy | Electric/Gas/Security Light - Oakley |
| S&T Communications LLC - Oakley | Phone/Internet/Security - Oakley |

**Edmond Office**

| | |
|---|---|
| City of Edmond | Electric/Water - Edmond |
| Cox Communication INC. | Phone/Internet/TV - Edmond |
| Hosted Solutions | Network/Storage - Edmond |
| Oklahoma Natural Gas | Gas - Edmond |

**Houston Office**

| | |
|---|---|
| Regus | Phone/Internet - Houston |

**Field Ops**

| | |
|---|---|
| AT&T | Air Time - Field Ops |
| Sprint | Cells Phones |
| Verizon Wireless | Air Time - Field Ops |